UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARIA L CORONADO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-178 |
| | § | |
| SAN PATRICIO COUNTY, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

On this day came on to be considered Defendant's Motion for Summary Judgment. (D.E. 16.) For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED. (D.E. 16.)

**I.      Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff has alleged violations of 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. 621 et seq. ("ADEA").

**II.     Factual and Procedural Background**

Plaintiff Maria Coronado timely filed this action on May 25, 2010, after exhausting her administrative remedies. (D.E. 1.) Plaintiff alleges discrimination on the basis of national origin (Hispanic) pursuant to Title VII and Section 1981, and age discrimination pursuant to the ADEA. She also asserts a claim of retaliation for her complaints of national origin, age, and gender discrimination. (D.E. 1 at 4-6.)

The facts in this action may be summarized as follows. Starting in 2001, Plaintiff was employed by San Patricio County as a Licensed Vocational Nurse ("LVN") at the San Patricio County Jail (the "Jail"). Plaintiff was hired by Sheriff Leroy Moody upon recommendation of Chief Jailer Janet Willison and Chief Deputy David Bowers. While employed at the Jail, Plaintiff's immediate supervisors were Chief Willison and Major Lorenzo Olivares. (D.E. 16 at 2.)

Plaintiff alleges that, starting in April 2006, she was subject to "unwelcome verbal sexual harassment, derogatory remarks, and physical harassment," such as the use of "foul and sexually offensive language" by the Sheriff. (D.E. 1 at 2.) Similar allegations were made with respect to a Sergeant as well as a Physician Assistant, whom Plaintiff alleges also subjected her to physical harassment. (D.E. 1 at 3.) Then, on or about March 4, 2008, Plaintiff was physically attacked by an inmate, suffering a black eye, and injuries to her face and neck. She subsequently requested personal protection and a security device from the Sheriff, and inquired into why the Jailer was slow to assist her. The Sheriff allegedly stated that the Jailer had gang-related ties, but did not respond when Plaintiff asked if she would be fired. The Sheriff also denied Plaintiff's request for a security device. (D.E. 1 at 3.)

Plaintiff claims that on numerous occasions she went to the Human Resources Personnel Director to complain about the hostile work environment, as well as age- and race-based discrimination. In July 2008, Plaintiff requested that she be transferred to another department, and explained that the request was due to the hostile environment. (D.E. 1 at 4.)

On July 7, 2008, Plaintiff was called into the Sheriff's Office, where the Human Resources Personnel Director and Assistant Chief David Bowers were present. Plaintiff was terminated at that time, and when she asked for an explanation, the Sheriff allegedly failed to give a specific reason for the termination, instead stating only, "no, get out of here." Plaintiff concludes that, although no specific reason was given for her termination, she felt she "was retaliated against for filing my complaints and because my race, sex, age, and vesting date for retirement (August 9, 2009)." (D.E. 1 at 4.)

For its part, Defendant contends that Plaintiff's "work performance declined over time," as she had trouble dealing both "with co-workers and with inmates." Defendant, through Sheriff Moody's affidavit, states that Plaintiff's problems with inmates were "significant and troubling," as she was "verbally abusive and unprofessional." He also states that she failed to perform her job responsibilities satisfactorily, and thus threatened jail safety. Defendant claims that Plaintiff's repeated failures to follow directions of her superiors "rose to the level of insubordination." (D.E. 16 at 2-3.) Defendant states that Plaintiff was counseled by her superiors in the spring of 2008, but her performance did not improve, ultimately leading to her termination on July 7, 2008. (D.E. 16 at 3.) On September 1, 2008, Plaintiff was replaced by Tracy Ann Mata, a Hispanic female born on August 6, 1977. Ms. Mata resigned in January 2009, and was replaced by Sandra Longoria, also Hispanic, born February 3, 1976. Ms. Longoria is still employed with the Jail, along with another individual, Denise Kerr (white, born July 24, 1950). (D.E. 16 at 4.) Defendant states that Plaintiff never brought allegations of discrimination or harassment to either Sheriff Moody or San Patricio County Judge Terry Simpson until she filed her Charge of Discrimination. (D.E. 16 at 4.)

Defendant filed a Motion for Summary Judgment on February 15, 2011. (D.E. 16.) In support, Defendant provides the affidavits of Sheriff Leroy Moody (D.E. 16-2), Judge Terry Simpson (D.E. 16-3), and documentary evidence. Plaintiff did not submit a Response by the March 8, 2011 deadline.

## III.  Discussion

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247. The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche

Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

Pursuant to Local Rule 7.4, "[f]ailure to respond [to a motion] will be taken as a representation of no opposition." S.D. Tex. L.R. 7.4. However, it is well-settled that a motion for summary judgment "cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985) (citations omitted).

### B.     Discrimination Claims

#### 1.     Applicable Law

Title VII makes it "an unlawful employment practice for an employer ... to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1). The ADEA forbids "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's age." 29 U.S.C. § 623(a)(1); see Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). Section 1981 allows for a claim "against private employers to remedy discrimination in private employment contracts." Oden v. Oktibbeha County, Miss., 246 F.3d 458, 462 (5th Cir. 2001).[1]

"A claim of employment discrimination can be proven through direct or circumstantial evidence. Where . . . the plaintiff does not produce any direct evidence of discrimination, we apply the well-known McDonnell Douglas burden-shifting framework as modified and restated . . . ." Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411 (5th Cir. 2007); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "Under the modified McDonnell Douglas approach, the plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic." Id. at 411-12.

A prima facie case of discrimination under either Title VII, Section 1981 (or Section 1983), or the ADEA requires a plaintiff to show "that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." Okoye v. Univ. of Texas Houston Health Science Center, 245 F.3d 507, 512-13 (5th Cir. 2001); see Jones v. Overnite Transp. Co., 212 Fed. App. 268, 273 (5th Cir.

---

[1] As discussed below, Plaintiff cannot assert a Section 1981 claim against San Patricio County.

2006) (citing Okoye). It is well established that "[t]he standard of proof for Title VII discrimination claims also applies to § 1981 claims, and ADEA claims." Roberson, 373 F.3d at 651; Monteverde v. New Orleans Fire Dep't, 124 Fed. App. 900, 904 (5th Cir. 2005).

    2.    Analysis

        a.    **Section 1981 Claim**

Plaintiff states a claim against Defendant San Patricio County for violation of Section 1981, 42 U.S.C. § 1981. (D.E. 1 at 5-6.) The Fifth Circuit has held, however, that Section 1983 remains the exclusive federal remedy against state actors for violations of Section 1981. Oden, 246 F.3d at 463 ("Section 1983 remains the only provision to expressly create a remedy against persons acting under color of state law. The addition of subsection (c) [to Section 1981] creates no more of a need for the judiciary to imply a cause of action under § 1981 against state actors than existed when the Supreme Court decided Jett [v. Dallas Independent School District, 491 U.S. 701, 731 (1989)].")[2]; see Garrett v. City of Houston, 102 Fed. App. 863, 864 (5th Cir. 2004) (The remaining claims at issue on appeal were brought against the City of Houston for alleged violations of rights established pursuant to § 1981 and the Fourteenth Amendment to the United States Constitution. Section 1983 is the proper vehicle for both Appellant's § 1981 and his Fourteenth Amendment claims.") (citing Oden). Although Plaintiff has not pled a cause of action under Section 1983, the Court will interpret her claim as such, and address the merits, along with her Title VII and ADEA claim.

---

[2] The Supreme Court in Jett held that § 1981 did not provide a separate cause of action against local government entities. Jett, 491 U.S. at 731. Thereafter, Congress passed the Civil Rights Act of 1991. The Act amended § 1981 by adding subsection (c), which states that the rights protected by § 1981 "are protected against impairment by nongovernmental discrimination and impairment under color of state law." 42 U.S.C. § 1981(c). The Fifth Circuit found in Oden that this did not alter Jett.

### b. Merits

In this case, summary judgment is warranted because Plaintiff clearly cannot make out her prima facie case of discrimination. While Plaintiff is a member of a protected class, was subject to an adverse employment action (termination), and was at least arguably qualified for her position, she cannot show that she was "replaced by someone outside the protected class." Okoye, 245 F.3d at 512-13.

The undisputed evidence demonstrates that after Plaintiff's discharge, she was replaced by Tracy Ann Mata, a 32 year old Hispanic female at the time of hiring, and Ms. Mata was subsequently replaced by Sandra Longoria, a 33 year old Hispanic female. (D.E. 16-2 at 3.) Although these two replacements were younger than Plaintiff (who was approximately 64 years old in 2008), both share the same race and gender. As to Plaintiff's claim of age discrimination, Denise Kerr, a 59 year old white female, was hired by Defendant on July 20, 2009 as an LVN. Ms. Kerr is thus of a similar age. These facts essentially preclude Plaintiff from making out the final element of her prima facie case.

Even if Plaintiff had sufficient evidence to satisfy her prima facie case, the evidence Defendant provides more than sufficiently establishes "a legitimate, non-discriminatory reason for its decision to terminate the plaintiff," namely failure to follow supervisor instructions, and poor work-place attitude. Sheriff Moody, through his affidavit, states that Coronado had "problems in her dealings with inmates and co-workers," "she refused to follow directions from her supervisors," would develop inappropriate "personal relationships with the inmates," would be "verbally abusive and unprofessional" to inmates, and her performance did not improve with counseling. (D.E.

16-2 at 1-3.) Beyond the performance problems described in Sheriff Moody's affidavit, Defendant has supplied inmate grievance forms complaining about Plaintiff's interactions with inmates, such as calling an inmate a "little bitch," making an inmate "cry" after telling the inmate that she was never going to see her children again, telling an inmate with a toothache that she did not "need to eat, it will not kill you to not eat. In fact [you] will be beautiful by not eating," and generally neglecting sick calls. (D.E. 16-2 at 4-10.) Defendants have also included written documentation from Chief of Corrections Janet Willison regarding ongoing problems with Plaintiff's performance, including failure to observe security procedures, and neglect of patients. (D.E. 16-2 at 12-14.) The record also contains statements by Sergeant Olivares regarding failure to follow orders and security protocols. (D.E. 16-2 at 15-18.)

Plaintiff has not responded, nor otherwise offered evidence to create a genuine issue of material fact as to pretext or "motivating factor." Other than certain alleged "offensive" or sexually charged comments, sometimes not even directed at Plaintiff, she has no evidence that she was discriminated against on the basis of her race, gender, or age. (D.E. 1 at 2-3.)

Because Plaintiff cannot meet her burden of proof, the Court must grant Defendant's summary judgment motion as to Plaintiff's claims of age, race, and gender discrimination. The Court next considers Plaintiff's retaliation claim.

### C.     Retaliation Claims

The elements of a prima facie case of retaliation are: "(1) [the plaintiff] engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action." Septimus v.

University of Houston, 399 F.3d 601, 610 (5th Cir. 2005). If the plaintiff can establish her prima facie case, "the burden then shifts to the [defendant] to state a legitimate non-retaliatory reason for its action. At this point, any presumption of retaliation drops from the case, and [the plaintiff] must show that the [defendant's] stated reason is actually a pretext for retaliation." Id. at 610-11.

Once again, Plaintiff cannot make out a prima facie case. It is clear that an "adverse employment action" occurred. There remains a factual dispute as to whether Coronado engaged in a protected activity, as the parties dispute whether in fact Coronado ever complained about discrimination prior to her discharge. (See D.E. 16-3 at 1.) However, even assuming Plaintiff did so, there is no evidence of a "causal link" between the protected activity and the adverse action. Septimus, 399 F.3d at 610. As detailed above, the County has sufficiently demonstrated non-retaliatory reasons for Plaintiff's discharge, namely her insubordination and problems interacting with inmates. Plaintiff has no evidence to demonstrate pretext. She has no evidence that Sheriff Moody knew about her claims of discrimination prior to her termination, or that Defendant's actions in any way were motivated by an intent to retaliate against her for making discrimination claims (if she in fact did so).

In light of the lack of evidence, the Court must dismiss Plaintiff's retaliation claim. Plaintiff has failed to provide any evidence to support her claims necessary to survive summary judgment.

## IV.     Conclusion

For the reasons stated above, the Court hereby GRANTS Defendant's Motion for Summary Judgment (D.E. 16) and DISMISSES this action with prejudice.

SIGNED and ORDERED this 15th day of March, 2011.

									_____
									Janis Graham Jack
									United States District Judge